# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| MICHAEL KLEAN, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | 08 C 6233 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| THE BOARD OF EDUCATION OF ) | |
| PROVISO TOWNSHIP SCHOOL ) | |
| DISTRICT 209, PROVISO TOWNSHIP ) | |
| DISTRICT #209 and EMMANUEL ) | |
| CHRISTOPHER WELCH, ) | |
| ) | |
|    Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendants Proviso Township School District No. 209 ("District"), its Board of Directors ("Board") and Board Member Welch for their alleged violations of Plaintiff has sued them for violating Title VII and 42 U.S.C. §§ 1981 and 1983. Defendants have filed a motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion.

## **Facts**[1]

The District is comprised of Proviso East High School, Proviso West High School and Proviso Math and Science Academy ("PMSA"). (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 2.) From 2000-2002, plaintiff, who is white, was the security manager for Proviso West, a school with a racially diverse student body. (*Id.* ¶ 3; *id.*, Ex. A, Pl.'s Decl. [Pl.'s Decl.] ¶ 7.)

---

[1] The following facts are either undisputed or viewed favorably to plaintiff.

In 2002, Welch was elected to the Board. (Pl.'s Decl. ¶ 9.) Thereafter, plaintiff was transferred from Proviso West to Proviso East, which has a predominantly African-American student body, and Ronald Hopkins, who was the security manager for Proviso East, was transferred to Proviso West. (*Id.*) The principal of Proviso East told plaintiff that Welch arranged the swap to keep Hopkins, who campaigned for Welch, from being fired. (*Id.*) Then-Superintendent William Krause told plaintiff that he had been transferred to Proviso East because he opposed the current Board members' election. (*Id.* ¶ 10.)

After Welch became a Board member, he told plaintiff to cut the hours of white security officers and hire more African Americans. (*Id.* ¶¶ 28-29.) Krause also told plaintiff to reduce the number of white officers and to keep track of the security officers' hours by race. (*Id.* ¶ 30.)

In 2005, Welch ran for re-election and again told plaintiff he had to work on the campaign to protect his job. (*Id.* ¶ 19.) Welch also told plaintiff he had to sell tickets to Welch's "birthday parties" or buy the tickets himself and that plaintiff's subordinates would lose their jobs if they did not do so as well. (*Id.* ¶¶ 20, 23.) During the campaign, plaintiff told Welch that the African-American security managers were getting better treatment. (*Id.* ¶ 26.) Welch's response was that he would protect plaintiff's job if plaintiff continued to do political work. (*Id.*)

At some point in 2005, plaintiff told Welch that he did not want to sell tickets anymore, could not afford to buy tickets himself and could no longer do campaign work on weekends. (*Id.* ¶ 23.) Welch said he could not protect plaintiff's job if he did not "step[ ] up." (*Id.*)

In 2005, the District opened PMSA and created a security manager position for the school. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 21.) In 2006, plaintiff was given that position, and Robert Taylor, an African American who had been assistant security manager at Proviso East, became that the security manager for Proviso East. (Pl.'s Decl. ¶ 11; Pl.'s Stmt. Add'l Facts ¶ 29.) PMSA Principal

Andrew Johnson told plaintiff that he had been transferred to the school because he was white. (Pl.'s Decl. ¶ 12.)

PMSA does not have its own athletic program. (Defs.' LR 56.1 Stmt., Ex. D, Gale Dep. at 81.) When plaintiff was security manager at PMSA, he was asked to go to the other schools to help out at sporting events. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 22.) The other security managers did not help out at PMSA. (Pl.'s Decl. ¶ 16.)

In October 2006, plaintiff applied to be the District's director of security. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 8.) The job was awarded to Brandon Gale, who is African American. (Defs.' LR 56.1 Stmt., Ex. L, Board Action Items.)

In the fall of 2006, the District's security department had four managers: (1) Gale, who was Director of Security; (2) Luther Curtis, an African American who was the security manager for Proviso West; (3) Taylor, who was security manager for Proviso East; and (4) plaintiff, who was security manager for PMSA. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 18.)

In 2007, the District had a $14 million deficit. (Defs.' LR 56.1 Stmt. ¶ 23.[2]) To address the problem the District eliminated, among others, the director of security position. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 24.) Gale became the PMSA security manager, though his salary was not decreased, and plaintiff was demoted from security manager to security officer. (Pl.'s Stmt. Add'l Facts ¶ 24; Pl.'s Resp. Defs.' LR 56.1 Stmt., Ex. F, Gale Dep. at 68-69.) Taylor and Curtis remained as the security managers for Proviso East and West, respectively. (*Id.*[3]) Gale, Taylor and Curtis all did campaign work for Welch. (Pl.'s Stmt. Add'l Facts ¶¶ 5-6.)

---

[2]Plaintiff disputes this paragraph of defendants' fact statement, but the evidence he cites does not controvert this fact. (*See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 23.)

[3]Plaintiff disputes this paragraph of defendants' fact statement but the evidence he cites does not controvert this fact. (*See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 25.)

**Discussion**

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

According to Illinois law, the District is a geographical area in which the Board operates schools. *See* 105 Ill. Comp. Stat. 5/1-3; *Bd. of Educ. of Bremen High Sch. Dist. No. 228 v. Mitchell*, 899 N.E.2d 1160, 1163 (Ill. App. Ct. 2008). Moreover, the Illinois School Code makes the Board, not the District, amenable to suit. *See* 105 Ill. Comp. Stat. 5/10-2. Thus, the Board, not the District, is the proper defendant in this suit. Therefore, the Court dismisses the claims plaintiff asserts against the District.

The remaining defendants are entitled to judgment as a matter of law on plaintiff's failure to promote claims. Title VII makes filing a charge of discrimination with the EEOC within 300 days of the allegedly discriminatory event a prerequisite to filing suit. *See* 42 U.S.C. § 2000e-5(e)(1). The only EEOC charge in the record was filed by plaintiff on December 8, 2007 and pertains solely to his demotion. (*See* First Am. Compl, Ex. I.) Because there is no evidence that plaintiff filed a timely EEOC charge with respect to defendants' failure to promote him in October 2006, they are entitled to judgment on that claim.

4

The same is true for plaintiff's section 1981 and 1983 failure to promote claims. Both statutes have a two-year limitations period, which starts to run when the allegedly discriminatory decision is made. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (per curiam) (section 1983); *Walker v. Abbott Labs.*, 340 F.3d 471, 474 (7th Cir. 2003) (section 1981). It is undisputed that Brandon Gale was given the job plaintiff sought on October 24, 2006, more than two years before plaintiff filed this suit on October 30, 2008. (Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 17.) Given that fact, and the absence of evidence suggesting that any tolling doctrine applies, plaintiff's section 1981 and 1983 failure to promote claims are time-barred.

The Board can be held liable under section 1981 or 1983, only if the alleged constitutional violations were caused by one of its policies. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (section 1983); *Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1148 (7th Cir. 1999) (section 1981). A policy, in this context, can be an express policy, an established practice or action by a person with final policy-making authority. *Baxter ex rel. Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994).

There is no evidence that the Board has an express policy of treating African-American employees more favorably than whites, but plaintiff contends that the record raises a triable fact issue as to whether the Board has a widespread and permanent practice of doing so. Viewed favorably to plaintiff, the record shows that: (1) Krause and Welch told him in 2002 to hire more African-American security officers and then-superintendent Krause told him to track the security officers' hours by race; (2) principal Johnson told plaintiff in 2006 that he had been transferred to PMSA because he is white; (3) after his transfer to PMSA, plaintiff had to work longer hours than his African-American peers and was the only security manager required to go to other school buildings for after-school events; (4) Welch and Board member Kelly ignored plaintiff's 2005 and 2006 complaints of discrimination; (5)

Gale, who had only been with the district for four years and had no prior security experience, was chosen instead of plaintiff for the director of security position in 2006; (6) Gale's salary was not decreased when he was "demoted" from director of security to PMSA security manager in 2007, despite the Board's assertion that his position had been eliminated to save money; (7) Curtis and Taylor's salaries were not decreased in 2007; and (8) though Gale, Curtis and Taylor retained management positions, each had been a security manager for a shorter period of time than plaintiff, Taylor had two suspensions and a reprimand during his tenure as a security manager and plaintiff was the only manager who had worked at all of the District schools. (Pl.'s Decl. ¶¶ 12-16, 26-30, 37; Pl.'s Stmt. Add'l Facts ¶¶ 1, 32, 36; Pl.'s Resp. Defs.' LR 56.1 Stmt., Ex. F, Gale Dep. at 68-69.) Taken together, this evidence is sufficient to suggest that the Board had a practice of favoring African-American employees.

The same evidence suggests that the Board's demotion decision may have been motivated race in violation of Title VII. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005) (stating that "the pertinent question in a Title VII case is not whether a plaintiff has direct (including circumstantial) or indirect proof of discrimination, but whether [he] has presented sufficient evidence that [his employer's] decision was motivated by an impermissible purpose" (quotation and alteration omitted)).

Plaintiff has also raised a triable issue as to whether the Board has a policy of requiring employees to do political work. Viewed favorably to plaintiff, the record shows that: (1) in 2002, then-superintendent Krause, told plaintiff that he had been transferred to Proviso East in place of Hopkins because he opposed the Board members' election, and the principal of Proviso East told plaintiff that Welch arranged the job swap to save campaign-worker Hopkins' job; (2) in 2002, Taylor learned about the assistant security manager job at Proviso East from a posting in the Democratic

office; (3) during the 2005 election campaign, Welch told plaintiff that he and his subordinates would lose their jobs if they did not work on the campaign and buy tickets to fund-raising events; (4) in 2006, Welch told plaintiff he would not protect plaintiff's job if he did not work on another Board candidate's campaign; (5) one month before his 2007 demotion, then-superintendent Libka told plaintiff to start looking for a job "based upon [plaintiff's] not doing campaign work"; and (6) Gale, Taylor and Curtis campaigned for Welch in 2007 and retained management positions. (Pl.'s Decl. ¶¶ 9-10, 19-23, 25, 36; Pl.'s Stmt. Add'l Facts ¶¶ 5-6, 30.) This evidence is sufficient to raise a triable issue as to whether the Board had a practice of requiring employees to do political work to retain their jobs in violation of the First Amendment. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990) (holding that the First Amendment forbids government employers from taking adverse action against employees because of their political beliefs or activities).

Welch can be held individually liable under sections 1981 and 1983 only if he caused or participated in the allegedly unconstitutional decision to demote plaintiff. *Hilldebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (section 1983); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985) (section 1981). Illinois law vests the Board with the authority to make all employment decisions. *See* 105 Ill. Comp. Stat. 5/10-20.5 (giving the Board power "[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district"); 105 Ill. Comp. Stat. 5/10-21.4, 21.4a, 23.5 (stating that superintendents and principals can make employment recommendations, but the Board retains full authority to make the decisions). However, defendants offer unrefuted evidence that the Board delegated its authority to make demotion and transfer decisions to the Superintendent, who made the decision to demote Klean. (*See* Defs.' LR 56.1 Stmt., Ex. P, Emails to and from Libka and Johnson of 11/26/07 (stating that Superintendent Libka had the authority to transfer Klean and Gale even if the transfers decreased their salaries).) Moreover,

plaintiff offers no evidence that suggests Libka consulted with Welch about the decision or was coerced or influenced by Welch into making it. (*See* Defs' LR 56.1 Stmt. ¶ 28 (asserting that Welch did not tell the Superintendent to demote Klean).)[4] Absent such evidence, Welch cannot be held liable under sections 1981 and 1983 for plaintiff's demotion.

Welch is also entitled to judgment on plaintiff's Title VII claim because that statute does not impose liability on individuals. *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995).

**Conclusion**

For the reasons set forth above, the Court grants defendants' motion for summary judgment [doc. no. 70] in part and denies it in part, dismisses the claims asserted against Proviso Township District No. 209 and enters judgment as a matter of law in favor of Welch on the 42 U.S.C. §§ 1981 and 1983 and Title VII claims plaintiff asserts against him. The Court denies the motion with respect to the claims plaintiff asserts against the Board.

**SO ORDERED.**　　　　　　　　　　　　　　　ENTER:　　September 17, 2010

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**

---

[4]Plaintiff disputes this paragraph of defendants' fact statement, but the evidence he cites does not controvert this fact. (*See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 28.)